FILED

2018 Jun-22  PM 11:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GOLDCO DIRECT LLC,** | ) | |
| Plaintiff, | ) | **Case No.:**  4:18-CV-00850-KOB |
| v. | ) | |
| | ) | |
| **BARBARA CLACKUM, *et al.*,** | ) | |
| Defendants | ) | |

---

| | | |
|---|---|---|
| **BARBARA CLACKUM** | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.:**  4:18-CV-00850-KOB |
| | ) | |
| **GOLDCO DIRECT, LLC;** | ) | |
| **GOLDCO DIRECT, LLC /dba/** | ) | |
| **goldcopreciousmetals.com;** | ) | |
| **TREVOR GERSZT; and** | ) | |
| **BRENDA WHITMAN** | ) | |
| Counter-Defendants. | ) | |

## VERIFIED CROSS-CLAIM FOR DAMAGES AND PUNITIVE RELIEF; DEMAND FOR JURY TRIAL

Plaintiff Barbara Clackum ("Ms. Clackum") hereby files this complaint against Defendants Goldco Direct, LLC ("Goldco"), Trevor Gerszt ("Mr. Gerszt") and Brenda Whitman ("Ms. Whitman"). As and for its complaint, Ms. Clackum alleges as follows:

### NATURE OF ACTION

1.     This civil action is about Defendants' fraudulent misrepresentation of the value, suitability, and viability of investments in gold, silver, other so-called precious metals, a "Gold IRA" and/or "Precious Metals IRA",

combined with an unrelenting and unconscionable high-pressure sales campaign squarely directed at Ms. Clackum using carefully conceived and calculated tactics and psychological ploys, including, but not limited to: harassment, scare tactics, threats of financial ruin, and deliberate, knowingly false claims made to convince Ms. Clackum, a then 77-year-old widow, to use a massive percentage of her life savings to purchase Defendants' investment products as a means to secure the financial security of her then 39-year-old, severely mentally-disabled daughter.

2.   Over the course of nearly two years, Defendants caused Plaintiff, who is now 79 years of age, extreme mental anguish and distress caused not only by their harsh treatment of her, but also by causing serious and significant damage to her life savings, including principal, at all times employing an unconscionable and unlawful, continual and ongoing false pretext—that Defendants knew what was best for Plaintiff Barbara Clackum's investment situation—while Defendants proclaimed their unified, continued commitment to Plaintiff to prudently manage her above-mentioned financial assets to the benefit of both Plaintiff and her severely handicapped adult daughter.

3.   Collectively and individually, and through their combined powers of delegation to others under their control, Defendants falsely and fraudulently represented themselves to Plaintiff Barbara Clackum as premier experts in personal investment strategies specifically and uniquely tailored to fit the needs of those in Ms. Clackum's particular position and circumstances. In like manner, Defendants themselves and through those under their control enforced a deliberate and well-orchestrated ongoing plan to both manipulate and also intimidate Ms. Clackum into purchasing Defendants' line of Gold and Silver Individual Retirement Account (IRA) investment products. While dealing with Ms. Clackum, however, Defendants at all times and in all places knew, in fact:

(a) that their investment products were significantly and unconscionably over-valued and over-priced, especially far beyond Ms. Clackum's risk tolerance and phenomenal need to preserve financial capital; (b) that the prices of such investment products far exceeded her ability to recover monetary losses resulting from these ill-advised, deliberately misrepresented, and dangerous investments; (c) that Defendants' advice to Ms. Clackum was, on its face, patently unsound and sharply deviated from investment industry standards, sound investment principles, and investment industry-standard practices typically advised for persons like Plaintiff, especially given Ms. Clackum's caution-inspiring position as an investor for and in behalf of her severely mentally disabled special-needs child; and (d) that Defendants' willfully, knowingly, deliberately and routinely misrepresented the value, utility, practicality, and desirability of their investment products to Ms. Clackum in order to violate her trust and thereby unlawfully obtain her money.

4. After some personal inquiry and consultation with family, Ms. Clackum gradually came to realize Defendants' perpetual and routinely fraudulent misrepresentations as such, Defendants' apparent ignorance of industry standard investment guidance, Defendants' use of hardball sales tactics and sheer, undiluted lack of professional regard for her investment needs in the present, as well as her intense need to provide for her stricken daughter's future after Ms. Clackum was gone.

5. By degrees, Plaintiff came to understand the horrible tragedy of the scheme Defendants knowingly perpetrated on her. She gradually became both panic-stricken for her daughter's sake, and totally humiliated that she, a grown, mature adult, could allow herself to be manipulated into buying Defendants' absurdly inappropriate investments. Plaintiff Ms. Clackum felt even more devastated when she realized Defendants—all the while misrepresenting themselves to her as experts regarding secure,

safe investments for elderly and retired individuals, and also that they truly and in fact cared for her and her daughter's welfare—had instead betrayed her trust and squandered her hard-earned resources.

**6.**     Anguish, unbelief, depression, distress, fear and trembling became Ms. Clackum's constant companions as she struggled to undo the financial and emotional damage Defendants knowingly, purposefully, and with fraudulent intent inflicted upon her.

**7.**     Defendants contracted with Ms. Clackum using an unduly one-sided investment contract, not approved for use under Alabama State law, and in direct violation of this State's Anti-Elder Abuse law.

**8.**     In addition, Defendants failed to rescind duly-cancelled transactions Ms. Clackum made with Defendants, totaling several hundred thousand dollars, also in violation of Alabama State law. Instead, Defendants misrepresented the actual facts underlying these transactions in order to purposefully create a false record of her attempts to rescind them. In doing so, Defendants acted out of sheer greed and their desire to retain, against Ms. Clackum, their markup of nearly two hundred percent, thereby wrenching almost two-thirds of Ms. Clackum's total funds ostensibly "invested" through Goldco.

**9.**     Defendants achieved their unconscionable price markups chiefly by misrepresenting custom-minted "vanity" coins of no true additional worth above their actual melt value. Falsely, Defendants represented these coins as "far more valuable" than their true industry-standard melt values. In fact, Mrs. Clackum was falsely told by Defendants and those employees under Defendants' control that the financial statements she would receive from her IRA administrator would show only the "melt" value, but not to worry—because, in fact, the items purchased were worth far more in terms of "numismatic" value.

10. Indeed, when Ms. Clackum received quarterly reports from her IRA administrator she observed a listed value decrease—just as Defendants had falsely represented she would. This was an obvious falsehood Defendants perpetrated to postpone the terror of having been entirely victimized until such time as Goldco, her predator, could claim she should have protested sooner.

11. Here it should be observed that Defendants violated Federal law by selling so-called "numismatic" gold and silver to Ms. Clackum, because such "numismatic"-designated investment is specifically disallowed in self-directed IRAs.

12. In an effort to be made whole and to obtain relief from Defendants' unconscionable, unrelenting, and predatory, illegal practices perpetrated upon her, Plaintiff Barbara Clackum seeks a full rescission of all her outstanding purchases from Goldco, a genuine pro-rata accounting of monies owed to her, and damages for the nightmare of pain and suffering Defendants have imposed upon her by virtue of their illegality and misdeeds, of which they continue to inflict upon her by still contacting her with misleading offers to force feed her further investment products, therefore reminding Ms. Clackum of their past unlawful and decidedly fraudulent conduct towards her. Plaintiff also seeks costs and other relief as deemed appropriate under law.

## THE PARTIES

13. Ms. Clackum is an adult resident citizen of Gadsden, Alabama. Ms. Clackum is a citizen of Alabama within the meaning and intent of 28 U.S.C. § 1332.

14. Upon information and belief, Goldco is a limited liability company organized under the laws of the State of Delaware and has its principal place of business in Los Angeles, California. Goldco's sole member, founder and former Chief Executive Officer (CEO) Trevor Gerszt ("Mr. Gerszt"), is an adult resident

citizen of Studio City, Los Angeles, California. Therefore, Goldco is a citizen of California within the meaning and intent of 28 U.S.C. § 1332.

15.   Upon information and belief, Trevor Gerszt ("Mr. Gerszt"), is an adult resident citizen of Los Angeles, California. Mr. Gerszt is a citizen of California within the meaning and intent of 28 U.S.C. § 1332.

16.   Upon information and belief, Goldco's current Interim CEO, Ms. Brenda Whitman, (Ms. Whitman) is an adult resident citizen of Studio City, California. Ms. Whitman is a citizen of California within the meaning and intent of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

17.   The Court has general personal jurisdiction over Ms. Clackum because she is a resident of Gadsden, Alabama and has continuous and systematic contacts with the State of Alabama.

18.   The Court has specific personal jurisdiction over Goldco because Goldco has repeatedly and systematically conducted investment sales transactions with Ms. Clackum during the time of her Alabama residency, using mail, email and telephonic means of contact Ms. Clackum for these purposes.

19.   The Court has specific personal jurisdiction over Mr. Gerszt because, as the founder of Goldco, its owner and sole member, and its CEO within the time period Ms. Clackum transacted business with his company, Mr. Gerszt controlled Goldco's operations. either personally or through a surrogate "Interim CEO", Ms. Whitman.

20.   The Court has specific personal jurisdiction over Ms. Whitman because she is Goldco's Interim CEO ostensibly in charge of its day-to-day operations. Before Mr. Gerszt was removed as Goldco's CEO, Ms. Whitman maintained a close working relationship with Mr. Gerszt, was aware of Goldco's operational methods, sales techniques, and client base including Plaintiff Barbara Clackum. As its Interim CEO, Ms. Whitman also had direct

communication with Ms. Clackum regarding Ms. Clackum's request to rescind a purchase from Goldco in excess of $298,000.

21. The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(l). There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events, acts, and/or omissions giving rise to this controversy occurred in this judicial district.

**FACTUAL BACKGROUND**

23. This civil action arises largely from Defendants' purposeful, unlawful, and fraudulent mistreatment of elderly Alabama widow Barbara Clackum. In or about mid-2016, Ms. Clackum contacted Goldco with a general inquiry. Thereafter, Goldco began a series of repeated sales calls to allegedly "follow-up" on her brief inquiry. Goldco began pestering her with these communications, the bulk of which were made telephonically, although others were made by email. During this time, Goldco, through its sales force, learned she was an elderly, 77-year-old widow with a few hundred thousand dollars in life savings assets, including long-term securities in IRA funds. Goldco was also made aware that Ms. Clackum's foremost, overarching and most important investment goal was to position her then-held assets so as to preserve and grow capital sufficient to provide care for her then 39-year-old daughter, who is severely mentally disabled. Goldco learned that Ms. Clackum's daughter required particularly specialized care including providing for life's basic necessities as well as also providing a managed program of activities requiring specialized supervision from professionally qualified persons, access to specialized facilities and/or public facilities, transportation, cooking and cleaning. In addition, Ms. Clackum's special-

needs daughter requires specialized nursing visits, medical care, schooling and other help and care common to any person in her position. Such care is quite expensive. Goldco knew of these conditions and needs, which Ms. Clackum reported to Goldco's personnel.

24. Ms. Clackum invested decades of time, money, and significant effort developing the financial means, including but not limited to her life savings, to care for herself and conservatively establish, maintain, protect, and provide a perpetual funding source to care for her adult disabled daughter after Ms. Clackum's eventual death.

### Goldco Strikes

25. In direct opposition to its claimed operating policies and procedures, Goldco personnel began a systematic campaign to acquire Ms. Clackum's financial assets by using constant email, and telephonic, threats of economic meltdown, stock market crashes, and generally impending financial fiasco on a global scale. Goldco punctuated this message in repeated verbal misrepresentations, deliberate overstatements and by unconscionably providing false and/or inherently misleading statements and written materials to Ms. Clackum, such as assigning "numismatic" or "collector" value to coins with not only zero "numismatic" or true "collector" value, but which ultimately had to be sold as scrap at industry standard "melt" price. Making matters worse, Goldco perpetrated this fraudulent scheme this using IRA funds which Federal law expressly excludes investments in so-called "numismatic" coins.

26. By September 20, 2016, Goldco Account Representative Jeffrey Vito sent to Ms. Clackum an email containing the subject line: "**Fwd: M1 says gold is going to $10,000**". Adding a personal touch, Mr. Vito told Ms. Clackum, "Here is an article discussing gold going to $10,000." Without referencing the author's name, credentials or qualifications, or even explaining who or

what "M1" is, Mr. Vito provided Ms. Clackum with a highly speculative, misleading, rhetorical, and alarmingly one-sided "scare tactic" article—the exact opposite of a balanced, clearly stated piece of balanced journalism or economic analysis. As it turns out, "M1"—a term unknown to Ms. Clackum at the time—is in fact "The smallest of several measures of the stock of money in an economy . . . consisting primarily of currency held by the public" and other negotiable instruments. (Alan Deardorff. "Money supply," Terms of Trade: Glossary of International Economics (2nd ed. 2014).) In fact, the article Mr. Vito emailed Ms. Clackum conveniently ignored an entire constellation of other relevant monetary measurements, indicators and terms (such as M Zero, M3, M2, MZM, M4-, M4, "quantity theory" of money, "monetary aggregates", "vault cash", growth rate calculations", "money multipliers", "broad money", and so forth). Neither Mr. Vito nor anyone else under Goldco's supervision attempted at any time to explain such concepts to Ms. Clackum, or the fact that monetary theory is extremely complicated and requires vast knowledge and professional expertise to employ in real-world circumstances.

27. Immediately following the scare-tactic article proclaiming gold's imminent rise to $10,000 an ounce, Goldco Account Representative Mr. Vito wrote Barbara the following warning: "Now is the time to protect your life savings. Now is the time to safeguard your future. The signs are everywhere. Don't miss your opportunity. . . "Call me now to get started protecting your retirement savings."

28. Thereafter, Jeffrey Vito of Goldco continued to hound Ms. Clackum with frantic telephone calls wherein he used high-pressure sales tactics and ploys to convince her of the necessity of buying Goldco's products in order to both protect and grow her finances in order to provide a safe, stable, glowing financial legacy for her mentally-disabled daughter.

29. On October 1, nine days before Ms. Clackum signed Goldco's investment contract, Goldco Account Representative Jeffrey Vito sent Ms. Clackum an email containing the following subject line: **"Fwd: Gold Bull McEwen Sees Prices as high as $1,900 by the end of the year".** This email included, as Mr. Vito put it, "an article discussing why the price of gold might go as high as $1[,]900 by the end of the year" and invited Ms. Clackum to "call me if you have any questions or just want to chat." Citing complex economic issues such as "uncertainty build[ing] around the stability of global currencies and sovereign debt"; "Record-low global interest rates" triggering massive anxiety for investors; and other fear-inducing rhetoric unaccompanied by professional investment analysis, peer-review or opposing commentary of any kind, this article reported that Roger McEwen, a personality within the generically-characterized "gold industry" expected that "bullion could reach $5,000 in four years" based on factors as diverse as "crowd psychology," "the U.S. election" and "banking instability". This article reported McEwen's bold, yet unfounded claims: "Reasons for anxiety are multiple than what we've had in the past and there will be a triggering event." Following this vague, false prophecy, Goldco's Account Representative, Mr. Vito, reiterated his former warning to Ms. Clackum, stating, "Now is the time to protect your life savings. Now is the time to safeguard your future. The signs are everywhere. Don't miss your opportunity."

30. In the same email, Goldco's Account Representative Mr. Vito emphasized his current warning to Ms. Clackum in bold type: **"Don't Wait! Add Gold & Silver to Your IRA/401(k) Today!"** In regular typeface, Mr. Vito's final plea to Ms. Clackum was also dramatic: "Call me now to get started protecting your retirement savings."

31. Over time, Mr. Vito's high-pressure tactics wore down Ms. Clackum, who finally agreed to sign Goldco's "Client Agreement" and also Goldco's "Storage Agreement" on October 10, 2016. In doing so, and in reliance upon

Mr. Vito's fraudulent claims about securing a future for her mentally-disabled daughter, Ms. Clackum parted with a substantial percentage of her savings in order to purchase Goldco's claimed safety net of gold and silver IRA investment products.

32.   Distressed and unsure of herself following Mr. Vito's well-rehearsed sales scheme and constant badgering, coupled with not only his deliberate misrepresentations of value to Ms. Clackum, but additionally those of professional "tag team" sales closers (which misrepresentations Ms. Clackum did recognize at the time), on October 19, 2016, she emailed the following plea to Jeffery Vito, in his specific and supposed fiduciary capacity as a Goldco Account Representative:

> "I have sent in the client agreement and the storage agreement. I am to send in the money wire tomorrow. I am a little concerned about this as it does not go to a person, just to the bank. How are they to know who it is from, etc. I know I shouldn't be concerned but this took me a long time to save and I do not want anything to happen. I want my children taken care of. Please make me feel good about this. After all, there are people who beg, borrow and steal and my daughter feels I am easily taken advantage of. And I do not know you—so you can understand how I feel."

33.   Unfortunately for Ms. Clackum, Goldco's false and fraudulently misleading high-pressure representations resulted in her having already signed Goldco's contract. She was bound to its terms, or so she thought. Mr. Vito did not respond to her plea, "I want my children taken care of. Please make me feel good about this." He simply went on to the next victim; Mission accomplished.

34.   Instead of reassurance from Mr. Vito, Ms. Clackum received something else entirely: a fraudulent, illegal rip-off. According to Goldco's illegal contract terms, Ms. Clackum purchased 138 British-minted gold "Year of the Monkey" coins at a cost of $562 each for a grand total of $77,556, or 160%

of salable value. At the time of purchase however, the actual market price of these coins was merely $328 each, representing a total market value of $45,298. Put differently, due to Goldco's tireless campaign of badgering, high-pressure sales techniques and, more importantly, its willful, deliberate, and fraudulent misrepresentations made to Ms. Clackum, she immediately lost $32,258 for a Goldco-recommended pile of "Year of the Monkey" coins.

35. But that was not all: in the same Goldco-recommended purchase again misrepresented as a time-proven method to protect precious assets needed for her mentally-disabled daughter, Goldco required $45.95 each for 1,050 British-minted Silver "Year of the Rooster" coins—even though the actual market price was merely $16.94 a piece for these coins. Goldco's price to Ms. Clackum totaled $48,247 for a market value of only $17,367, a markup of 177 percent, or 277% of actual value.

36. As a result, Ms. Clackum's first Goldco transaction totaled $125,830 in payment in return for a true market value of $62,665—less than half these coins' true value, which Goldco knowingly and willfully misrepresented to Ms. Clackum. The immediate outcome of Goldco's fraud was that, instead of helping Ms. Clackum's desperately-needed finances, Goldco unconscionably delivered a devastating blow to her asset preservation and growth program planned exclusively for and in behalf of her special-needs daughter. And Goldco knew about Ms. Clackum's plan nearly from day one but chose to drain Ms. Clackum's pockets regardless of the consequences.

*Goldco Strikes Again*

37. Pursuant to its October 17, 2016 contract with Ms. Clackum, Goldco now considered her a "client" rather than a one-off customer from whom it gained significant profit regardless of consequence.

38. So, in February 2018, Goldco targeted Ms. Clackum once again. Now 79, with her short-term memory starting to fade, Ms. Clackum was still caring

for her mentally disabled daughter, now 41 years of age. Ms. Clackum had not made further contact with Goldco up to this point, still unaware of her striking financial loss as a result of her 2016 transaction with the company.

39. Goldco initiated further contact with Ms. Clackum. Using its same, but now more-refined sales tactics as those already once used to her detriment, Goldco sold Ms. Clackum on the concept of purchasing even more gold and silver IRA products in order to "supplement" and "strengthen" the protection Goldco's fraudulently-claimed "expert" guidance and products had previously established as, in truth, a false foundation for Ms. Clackum's asset preservation and steady future growth.

40. About this time a number of Goldco employees entered Ms. Clackum's life, pestering her with fear-mongering claims of impending financial calamity, stock market meltdowns, increased interest rates leading to market uncertainty, the economic need for a gold standard, the weakness of global paper currencies, the threat of the European Union's "Euro" replacing the United States "petrodollar" as the world's reserve currency, and a nearly endless stream of further doom-and-gloom arguments to support the "absolute necessity" of hedging Ms. Clackum's financial portfolio against the inevitable collapse of today's global monetary systems, including—with great emphasis—the United States dollar's destruction.

41. Although Ms. Clackum found Goldco's claims and false, speculative, misrepresentations confusing. she was no match for Goldco's high-pressure sales tactics. As a result, on March 7, 2018, she placed an order for 51 gold British-mint "Year of the Dog" so-called "numismatic" coins for $618 each, totaling $31,518; in the same order she was pressured to purchase 5,476 silver British-mint "numismatic" collector coins for $48.75 each, totaling $266,955. This total single purchase amounted to a massively inflated, unconscionable $298,473 price for non-IRA approved "numismatic" coins.

### Goldco Strikes for the Third Time

42.  Using a time-tested, well-worn high-pressure sales scheme, Defendants and those under their control celebrated their success in victimizing Ms. Clackum by hitting her once again, only a few days later, with a new, fraudulent proposal to fully, but falsely assure her and her beloved but disabled daughter's financial futures for good. The sales adage, "Strike while the iron's hot" launched Goldco personnel into high gear, pressuring Ms. Clackum into accepting their fraudulent proposed plan that she pursues one, final capstone purchase of "numismatic" coins which Goldco deliberately misrepresented as essential to completely "secure" what in reality were Ms. Clackum's now seriously depleted IRA holdings. Without conscience and devoid of regard for Ms. Clackum's situation, or her mentally dysfunctional daughter's future, on March 13, 2018 Goldco persuaded Ms. Clackum to purchase a whopping $159,901.72 of British-mint "Year of the Dog" gold coins (257 such coins at $620 each), and one extra "discounted" British-mint "Year of the Dog" gold coin for $561.72.

43.  For Defendants, this third time was indeed the charm; for Ms. Clackum, it was financial ruin. Yes, her house was paid for and planned for her mentally disabled daughter to remain throughout her life. But Ms. Clackum's finances were irreparable; her investment goals and hopes were indeed shredded. In consultation with her other daughter, a registered nurse sworn to that profession in a vow to spend her life and professional skills in caring for her disabled sister, Ms. Clackum finally awoke to the horrible reality of Goldco's greed and the devastation Defendants purposefully planned, deliberately implemented and fraudulently put upon her shoulders. Even a steel magnolia such as Ms. Clackum bowed to the weight of such a burden.

44.  The next day, on March 14, 2018 Ms. Clackum emailed Goldco employee, Lauren Romestant, the following message: "please cancel order sent in

yesterday, March 13, 2018" with a description of that fraudulently obtained order for $159,901.72.

45.    A full day of depression and all-encompassing worry waited for Ms. Clackum while Defendants took time to respond. On March 15, 2018, Goldco Senior Portfolio Manager Rick Dougherty emailed Ms. Clackum with the subject line, "Follow-up on your purchase". In defending the indefensible, Mr. Dougherty furthered Defendants' deception skillfully, explaining that Ms. Clackum's Goldco holdings were special, "limited" numismatic "assets" as opposed to commonplace "bulk" assets offered by inferior old and silver dealers. Indeed, Mr. Dougherty proclaim: "The exclusive coins we offer are the best in the world. Other firms do not have access to offer them. . . None of our assets are common." Further, Mr. Dougherty dug in deeper, replying to Ms. Clackum, "I thank you in advance for giving me the opportunity to show and prove to you that you made a wise investment[.]" This condescending assertion lacked any truth whatsoever, a sad fact Ms. Clackum now understood. She adamantly replied: "NO, I did not make a wise investment because I said to CANCEL ALL ORDERS— THAT INCLUDES THE ORDER PLACED MARCH 7, 2018 ALSO." To emphasize her point, Ms. Clackum sent a second reply email, on the morning of March 16, 2018, stating: "No you will not proceed. I said to cancel all orders and that is what you had better do."

46.    Hours later, on March 16, 2018, rather than thanking Ms. Clackum "in advance" Goldco Senior Portfolio Manager Rick Dougherty emailed Ms. Clackum, tersely stating: "Goldco under no obligation to allow you to cancel your purchase order from March 13, 2018. There is no 24-hour cancellation period. Once the transaction is confirmed on a recorded line it is fully completed. It would be like asking your stock broker to cancel a stock purchase after the fact. They would not allow you to do so." Mr. Dougherty's statement is but one further example of Goldco's knowingly, willfully false

and deliberate misrepresentations made over time to Ms. Clackum. Mr. Dougherty's email correspondence here deliberately misrepresented Ms. Clackum's right of rescission under applicable Alabama law; deliberately used a false analogy of buying stock, purchases of which the United States Securities and Exchange Commission (S.E.C.) regulates according to Federal law, (not Alabama law as in Ms. Clackum's case here); and fraudulently misrepresented Goldco's true "obligation" to grant Ms. Clackum her requested refund.

47.   In compliance, however, with what Mr. Dougherty knew to be true—yet previously misrepresented to Ms. Clackum, Dougherty next stated: "However, Goldco will allow you to cancel this transaction, as a courtesy and will send your money back to you. . .  I will confirm with you once the funds are on their way." Unfortunately for Ms. Clackum, this assurance of a refund was nothing more than a ruse in order to defraud her out of more money later.

48.   In truth, Mr. Dougherty failed to confirm his commitment to refund Ms. Clackum's cancelled $159,901.72 March 13, 2018 transaction. This failure caused abundant stress to Ms. Clackum, who became distraught, depressed, and sleepless with worry. Finally, she could withstand no more, and sent via certified mail a letter demanding refunds of all her fraudulently induced purchases.

49.   On March 21, 2018 Ms. Clackum received an email from Goldco's "Interim CEO" Brenda Whitman containing the following message:

> "Good Evening Mrs. Clackum,
> The found[er] and owner of Goldco, Trevor Gerszt, would like
> to speak with you personally regarding the letter we received
> from you. His cell phone number is [deleted] and we are in the
> Pacific time zone.  Please call at your convenience."

50. Fed up with Defendants' pervasive pattern of lies and artfully practiced deception, on March 22, 2018 Ms. Clackum emailed Ms. Whitman this message: "On 3-16-18, Rick Dougherty told me my 3-13-18 transaction would be refunded. Where is my MONEY?"

51. Here it should be noted that when Ms. Clackum sought to cancel her March 7, 2018, $298,473 transaction, as yet unidentified Goldco personnel contacted Ms. Clackum, who was afterwards left thinking she had lowered the $298,47300 transaction to $200,000. In actual fact, however, Goldco removed both sums from her IRA account to accomplish its gold sales scheme involving Ms. Clackum.

52. Ultimately, Goldco denied Ms. Clackum a refund of the fraudulently misrepresented, "special," "limited," "numismatic" coins improperly placed in her IRA account following her October 17, 2016 written contract with Goldco. As a result, Ms. Clackum was forced to transfer these falsely represented, unconscionably overpriced coins from Goldco's Client Storage Account to another facility and sell them at industry "melt" value— representing a massive loss to Ms. Clackum's already depleted IRA account holdings.

53. In addition, although Ms. Clackum canceled her March 7, 2018, $298,473 order by giving notice of such intent within the rescission period for such transactions set forth in Alabama law. Defendants' combined, illegal refusal to rescind this transaction likewise forced Ms. Clackum to transfer these falsely represented, unconscionably overpriced coins from Goldco's Client Storage Account to another facility and sell them at industry "melt" value. In this case, that value was $104,000. Defendants' fraud, deliberate misrepresentations and well-orchestrated program of deceit inflicted upon Ms. Clackum unconscionable losses of $194,473 in this single, deliberately misrepresented transaction with Goldco.

## COUNT ONE:
## CONSPIRACY TO COMMIT VIOLATION OF 18 U.S.C. § 1962

**54.** Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

**55.** 18 U.S.C. § 1964(c) establishes a civil cause of action for violations of 18 U.S.C. § I 962.

**56.** 18 U.S.C. § 1962(d), in turn, makes it "unlawful for any person to conspire to violate" 18 U.S.C. 1962(a), (b), or (c).

**57.** The definition of "racketeering activity" under subsections (a), (b), and

**58.** (c) includes 18 U.S.C. section 1341 (relating to fraud and mail fraud), section 1343 (relating to wire fraud), and inter alia, fraud in the sale of securities under 18 U.S.C. § 1951, the Hobbs Act. See 18 U.S.C. § 1961.

**59.** Defendants conspired to commit fraud and mail fraud, both under 18 U.S.C. § 1951.

**60.** Defendants conspired to commit wire fraud under 18 U.S.C. § 1951.

**61.** Defendants conspired to commit fraud in the sale of securities and/or commodities under U.S.C. § 1951.

**62.** Defendants conspired with each other to perpetrate an ongoing fraudulent series of material misrepresentations using mail, email and other forms of modern communications technologies in order to induce Ms. Clackum to purchase their line of investment products.

**63.** Defendants conspired with each other to perpetrate an ongoing fraudulent series of material misrepresentations using forms of wire communication in order to induce Ms. Clackum to purchase their line of investment products.

**64.** Defendants conspired with each other to perpetrate an ongoing fraudulent series of material misrepresentations in order to induce Ms. Clackum to purchase their line of investment products, by using investment contracts in the sales of securities and/or commodities.

65. Defendants' above-described multiple conspiracies would adversely affect interstate commerce.

## COUNT TWO:
## FRAUD

66.  Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

67. In violation of 18 U.S.C. § 1341, Defendants "devised" an elaborate, multi-faceted, ongoing scheme and artifice to obtain Ms. Clackum's money and/or access to her IRA account(s) "by means of false or fraudulent pretenses, representations, or promises" and, "for the purpose of executing such scheme or artifice or attempting so to do," "place[d]s in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service" and/or "deposit[ed] or cause[d] to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier" and/or took "or receive[d] therefrom, any such matter or thing, or knowingly cause[d] to be delivered by mail or such carrier according to the direction thereon," and "at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing," to wit: gold and silver coins intended for deposit in Plaintiff Ms. Clackum's IRA account(s); and correspondence.

68. Defendants' above-described multiple actions would adversely affect interstate commerce.

## COUNT THREE:
## FRAUD IN THE SALE OF SECURITIES, COMMODITIES

69. Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

70. In violation of 18 U.S.C. § 1348(2), defendants knowingly used an elaborate, well-rehearsed and executed scheme and artifice "to obtain, by means of

false or fraudulent pretenses, representations, or promises," Plaintiff Barbara Clackum's money and property in connection with the purchase or sale of any commodity for future delivery; to wit: gold and silver coins.

71. Defendants' above-described multiple actions would adversely affect interstate commerce.

## COUNT FOUR:
## WIRE FRAUD

72. Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

73. In violation of 18 U.S.C. § 1343, Defendants "devised [and]/or intend[ed] to devise" an elaborate, well-rehearsed, multi-faceted and ongoing scheme and artifice to defraud Ms. Clackum, and did so for the purpose of "obtaining money or property by means of false or fraudulent pretenses, representations, or promises" to her. In the course of doing so, Defendants transmitted and "cause[d] to be transmitted by means of wire" communications in interstate commerce, to wit: writing (contracts, emails). Defendants did so expressly for the purpose of executing such scheme or artifice.

74. In further violation of 18 U.S.C. § 1343, Defendants' acts described herein and specifically in the preceding paragraph "affect[ed] a financial institution" and/or multiple financial institutions.

75. Defendants' above-described multiple actions would adversely affect interstate commerce.

## COUNT FIVE:
## CONTRACT IN VIOLATION OF ALABAMA CODE SECTION 8-19A-14

76. Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

77. Defendants' investment contract made with Barbara Clackum fails, on its face, to comply with multiple provisions of Alabama Code Section 8-10A-

14, and therefore, pursuant to subdivision (a) of that section, "is not valid and enforceable against the purchaser."

78. As a result of the contract's failure described in the preceding paragraph, because Goldco, a commercial telephone seller, violated Section 8-19A-14. Pursuant to subdivision (e) of that section, "If a commercial telephone seller violates this act in making a sale . . ., the contract is voidable by giving notice to the commercial telephone seller, and the purchaser is entitled to a return from the seller, within 14 days, of all consideration paid."  Defendants' collective failure to comply with Section 8-19A-14 triggered this provision, in turn giving Ms. Clackum a fourteen-day rescission period, which she exercised as to her March 7, 2018 Goldco purchase order.

79. Goldco's above described pattern of fraudulent product representation, misrepresentation and ongoing deceit regarding the true nature, worth, and applicability of its products to Ms. Clackum's circumstances known to Defendants require that Ms. Clackum be fully refunded for all her transactions pursuant to Section 8-19A-14 (f)(1) because they were "not as represented" by Defendants, and also "defective" as to their lawful use in Ms. Clackum's IRA, and "defective" as an appropriate investment for her specific needs as described to, and known to, Goldco personnel and Defendants.

80. Pursuant to Section 8-19A-14 (f)(2) Ms. Clackum was entitled to a refund of her March 7, 2018 order because she made "a written request for the refund, credit, or replacement within seven days after . . . she receive[d] the goods or services." In point of fact, Ms. Clackum made such request in writing before she received the goods.

81. Defendants' above-described multiple actions would adversely affect interstate commerce.

## COUNT SIX:
## FINANCIAL EXPLOITATION IN VIOLATION OF THE ALABAMA PROTECTION OF VULNERABLE ADULTS FROM FINANCIAL EXPLOITATION ACT

82. Ms. Clackum restates and incorporates the allegations contained in all prior paragraphs of this Cross-Claim as if fully set forth herein.

83. Before Ms. Clackum signed Goldco's investment contract on October 17, 2018, the State of Alabama passed its Alabama Protection of Vulnerable Adults from Financial Exploitation Act. (Act 2016-141, § 1.)

84. Under the above-cited law, Ms. Clackum qualifies as a "vulnerable adult" due to her age.

85. Defendants violated this law by financially exploiting, for their own gain, Ms. Clackum according to Section 8-6-171(5) of this Act. Defendants obtained control of Ms. Clackum's investment funds "through deception, intimidation, [and] undue influence over the vulnerable adult's money, assets, or property to deprive the vulnerable adult of the ownership, use, benefit, or possession of . . . her money, assets, or property."

86. In addition, Defendants used the same means described above to "[c]onvert money, assets, or property of the vulnerable adult [Ms. Clackum] to deprive the vulnerable adult of the ownership, use, benefit, or possession of . . . her money, assets, or property."

87. Defendants' above-described multiple actions would adversely affect interstate commerce.

**WHEREFORE,** Plaintiff Barbara Clackum requests judgment against Defendants as follows:

1. That Defendants be held liable for all damages suffered by her resulting from the acts alleged herein;

2. Requiring Defendants to pay an award of damages in an amount to be determined at trial, plus pre- and post- judgment interest;

3. Requiring Defendants to pay an award of punitive damages as allowable

under the law;

4. Requiring Defendants to pay Ms. Clackum her full costs and reasonable attorneys' fees;

5. Granting Ms. Clackum any other remedy to which she may be entitled under Federal or State law; and

6. For such other and further relief to which Goldco shows it is justly entitled at law or in equity.

**FURTHER,** pursuant to Federal Rule of Civil Procedure 38, Ms. Clackum hereby demands a trial by jury on all counts herein pleaded against Defendants.

Respectfully submitted,

**/s/ Keith Cope**_____
Counsel for Barbara Clackum
California Bar No. 165696
Keith Cope, Attorney at Law
1574 West Street
Redding, CA 96001
530. 917.0077 *office*
530.245.9366 *fax*
keithcopeattorney@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 22nd day of June 2018, a true and correct copy of the foregoing was served to the clerk of court via the CM/ECF system and notice of such will be received via electronic notification to all counsel of record.

**/s/ Keith Cope**_____
OF COUNSEL

## VERIFICATION

STATE OF ALABAMA,

COUNTY OF _Etowah_

    Barbara Clackum, being duly sworn upon oath, deposes and says: (a) I am the Plaintiff in the instant Cross-Complaint in the above-entitled action, and on oath state that I am authorized to execute the above and foregoing verified complaint on my own behalf; (b) that not all of the facts stated therein are within my personal knowledge; (c) the facts stated therein have been assembled by my authorized legal counsel; and (d) that subject to the limitations set forth therein, I am informed the allegations are true and correct.

Dated: June 22, 2018    _Barbara Clackum_

                      Barbara Clackum

_Dale Nash_

My Commission Expires 8/23/2021