FILED

2018 Nov-30  PM 05:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

|  |  |  |
|---|---|---|
| **GOLDCO DIRECT, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 4:18-CV-00850** |
| **vs.** | ) | |
| | ) | |
| **BARBARA CLACKUM,** | ) | |
| **WARREN WILSON,** | ) | |
| **WHOLESALE GOLD SILVER IRA,** | ) | |
| **INC., and WILD WEST COINS, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Goldco Direct, LLC ("Goldco") hereby amends its Complaint in this action to add additional parties, substituting Defendant Warren A. Wilson for "Bruce Clackum" and adding Wholesale Gold Silver, IRA and Wild West Coins, Inc. as defendants. As and for its amended complaint, Goldco alleges as follows:

### NATURE OF ACTION

1.      This civil action is about the extortion of a reputable precious metals company that decided not to repurchase a customer's order pursuant to the clear, unambiguous language of the customer's client agreement. The customer, Barbara Clackum ("Ms. Clackum"), and Warren Wilson posing as her nephew under the false name "Bruce Clackum," misappropriated Goldco's confidential information and

attempted to hold it for ransom to pressure Goldco to pay money it did not owe. Goldco obtained a temporary restraining order, and ultimately a permanent injunction, in this action against Ms. Clackum and "Bruce Clackum." Goldco now seeks an injunction and damages against Mr. Wilson as well as Wholesale Gold Silver IRA, Inc. ("Wholesale Gold"), and Wild West Coins, Inc. ("Wild West"), precious metals companies that Mr. Wilson founded and that transacted business with Ms. Clackum.

## THE PARTIES

2.      Goldco is a limited liability company organized under the laws of the State of Delaware and has its principal place of business in Los Angeles, California. Goldco's sole member, Trevor Gerszt ("Mr. Gerszt"), is an adult resident citizen of Los Angeles, California.

3.      Ms. Clackum is an adult resident citizen of Gadsden, Alabama.

4.      Mr. Wilson is an adult resident citizen Agoura Hills, California.

5.      Upon information and belief, Wholesale Gold is a Nevada corporation with its principal place of business in Agoura Hills, California.

6.      Upon information and belief, Wild West is a Nevada corporation with its principal place of business in Goodyear, Arizona.

## JURISDICTION AND VENUE

7.      The Court has general personal jurisdiction over Ms. Clackum because she is a resident of Gadsden, Alabama and has continuous and systematic contacts with the State of Alabama.

8.      The Court has specific personal jurisdiction over Mr. Wilson because he used an Alabama telephone number to contact Ms. Clackum, Goldco, and Goldco's customers. He also used that Alabama telephone number to commit extortion on behalf of Ms. Clackum, an Alabama resident. Specifically, Mr. Wilson availed himself of Alabama law when he demanded compensation for Ms. Clackum based on his meritless allegation that Goldco violated Alabama law. Posing as "Bruce Clackum," Mr. Wilson also stated that he had contacted the Alabama Attorney General's Office and that Goldco's CEO needed to retain criminal counsel. Mr. Wilson also maintained a website, www.goldcosucks.com, which was viewable in Alabama and caused reputational harm to Goldco in Alabama.

9.      The Court has specific personal jurisdiction over Wholesale Gold because it has transacted business in Alabama through its dealings with Ms. Clackum.

10.     The Court has specific personal jurisdiction over Wild West because it has transacted business in Alabama through its dealings with Ms. Clackum.

11.     The Court has subject-matter jurisdiction over Counts One and Two pursuant to 28 U.S.C. § 1331.

12.     The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

13.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events, acts, and/or omissions giving rise to this controversy occurred in this judicial district.

## FACTUAL BACKGROUND

14.     This civil action arises largely from misappropriation of, and extortion using, confidential information from Goldco's customer database. It also arises from false and defamatory statements made against Goldco in furtherance of Defendants' extortion scheme.

15.     Goldco invested years of time, money, and effort developing the information in its customer database.

16.     The customer database includes, among other things, customers' personal identifying information and purchase histories.

17.     The information in the customer database allows Goldco to direct marketing and advertising efforts toward interested purchasers. Goldco also can recommend certain purchases based on the customers' particular interest as reflected in their purchase histories.

18.    Maintaining the confidentiality of the customer database is important for at least four reasons.

19.    First, Goldco's customers provide private, personal information to Goldco with the expectation that it will not be disseminated without the customers' consent. California law requires Goldco to maintain as confidential its customers' personal identifying information. *See* Cal. Fin. Code § 4050, *et seq*.

20.    Second, if Goldco's competitors obtained this information, they could avoid the considerable time and expense of developing their own customer database and directly solicit Goldco's customers. They would be taking unfair advantage of the investment and effort Goldco made to develop the customer database. Goldco's competitors would have a customer database at little or no cost, while Goldco incurred the substantial expense of developing the customer database.

21.    Third, Goldco's personnel obtain the information from customers and potential customers and need to know that they can comfortably request and save such information knowing that it will be confidential, and that they can correctly assure such persons that the information will be kept confidential. Without this assurance, Goldco personnel will not be as confident as they would otherwise be in obtaining such information.

22.    Fourth, Goldco wants its personnel to respect trade secrets and confidential information of others. To facilitate this requirement of Goldco

personnel, it is important that Goldco's confidential information and trade secrets be respected by others.

23.     As a result, Goldco goes to great lengths to maintain the confidentiality of its customers' information.

### Goldco requires all employees to sign NDAs

24.     For example, Goldco employees can view the customer database only after they sign a Confidentiality and Non-Disclosure Agreement ("NDA"), a true and correct copy of which is attached hereto as **Exhibit 1**.

25.     Pursuant to the NDA, every Goldco employee "acknowledges that during [the employee's] employment, [the employee] will have access to confidential, secret and proprietary documents, materials and other information of Goldco and its customers, suppliers, and other third parties ("Proprietary Information")." (Ex. 1 at 1, §1) (emphasis added).

26.     Every Goldco employee "understands and acknowledges such Proprietary Information is of great importance and value to Goldco, and improper use or disclosure of any Proprietary Information may cause irreparable harm to Goldco." (*Id.*)

27.     "Proprietary Information" includes "customer information." (*Id.*)

28.     The NDA requires every Goldco employee "to treat all Proprietary Information as strictly confidential" and "not to directly or indirectly disclose,

publish, communicate, or make available Proprietary Information, or allow or permit it to be disclosed, published, communicated, or made available, in whole or in part, to any entity or person whatsoever." (*Id.* at 2, § 2.)

29.     The NDA applies both "during and after [the employee's] employment with Goldco." (*Id.*)

30.     As a reminder to its employees of the importance of their obligations under the NDA, Goldco required all employees to re-sign the NDA in June 2017.

### *Goldco takes other steps to preserve its customers' information*

31.     Goldco also takes other steps to preserve the confidentiality of the customer database.

32.     Goldco's business offices are only accessible with a security card.

33.     Goldco's file cabinets, which contain confidential customer information, can only be accessed with a key.

34.     Goldco employees can only access the Customer Relationship Management software—which houses the customer database—with appropriate login credentials.

35.     Additionally, Goldco's email system and portal are password-protected.

36.     Finally, Goldco's personnel work in a competitive business and industry, where it is in Goldco's and personnel's interest to protect the confidentiality of, and avoid disclosure, of customer information.

### *Ms. Clackum purchases gold from Goldco*

37.     Ms. Clackum is one of Goldco's customers.

38.     Ms. Clackum first placed an order with Goldco in October 2016.

39.     On March 7, 2018, Ms. Clackum placed an additional order in the amount of $298,473.

40.     On March 13, 2018, Ms. Clackum placed a third order in the amount of $159,901.72.

41.     Within 24 hours of placing her third order, Ms. Clackum sought to cancel that order and requested a refund of that order.

42.     On March 20, 2018, Goldco received a letter from Ms. Clackum dated March 16, 2018, stating that she wanted to cancel an unspecified "order."

43.     Pursuant to Section 10 of Ms. Clackum's Client Agreement, a true and correct copy of which is attached hereto as **Exhibit 2**, Goldco "ha[d] no obligation" to "re-purchase coin/precious metals from [the] Customer." (Ex. 2 at 2, § 10.)

44.     Although it was not obligated to do so, Goldco agreed to cancel Ms. Clackum's third order for $159,901.72 and returned the additional amounts Ms.

Clackum provided to Goldco for this order for a total refund of $209,901.72. Ms Clackum cashed Goldco's check on March 27, 2018.

45.     Goldco did not agree to cancel or repurchase Ms. Clackum's second order.

### Ms. Clackum "lawyers up," and Mr. Wilson gets involved and induces Goldco employees to violate their NDAs

46.     At this time, or possibly earlier, Ms. Clackum hired an attorney, Mr. Keith Cope, who is licensed to practice law in California.

47.     Also at this time, or possibly earlier, Warren Wilson contacted Ms. Clackum. In correspondence with the trust company holding her precious metals, Ms. Clackum referred to Mr. Wilson as her "advisor."[1] (Ex. 3.)

48.     Mr. Wilson is the president of Wholesale Gold, a competing precious metals company with its principal place of business in Agoura Hills, California, a mere twelve miles from Goldco's principal place of business.[2] (Ex. 4.)

49.     Mr. Wilson also founded Wild West, another precious metals company that ultimately purchased Ms. Clackum's precious metals. [3] (Ex. 5.)

---

[1] A copy of the correspondence from Ms. Clackum to the trust company is attached hereto as **Exhibit 3**.

[2] A copy of records received from Wholesale Gold Silver IRA, Inc. is attached hereto as **Exhibit 4**.

[3] A copy of public records about Wild West from the Nevada Secretary of State is attached hereto as **Exhibit 5**.

50.     At all times material to the facts alleged in this Amended Complaint, Mr. Wilson acted, or purported to act, on Ms. Clackum's behalf.

51.     Upon information and belief, Mr. Wilson contacted former Goldco employees and actively induced them to violate their NDAs by providing confidential information from the customer database (the "Confidential Information").

### Mr. Wilson uses the Confidential Information to extort Goldco

52.     Mr. Wilson then used the Confidential Information to attempt to contact Goldco's customers under the alias "Bruce Clackum."

53.     Mr. Wilson used the Confidential Information to defame Goldco, harm its business reputation, and encourage litigation against it.

54.     Mr. Wilson purchased the domain name www.goldcosucks.com under the email address bclack@engineer.com and a credit card in the name of "B Clackum."[4] (Ex. 6.) Mr. Wilson used Ms. Clackum's address in Gadsden, Alabama as the shipping address and the billing address.

55.     Mr. Wilson also used a "Burner" phone application to send extortionate messages to Goldco senior management.[5] (Ex. 7.) Mr. Wilson often used the

---

[4] A copy of records received from GoDaddy.com is attached hereto as **Exhibit 6**.

[5] A copy of records received from Burner is attached hereto as **Exhibit 7**.

"Burner" application in the normal course of his businesses. Mr. Wilson associated

the "Burner" number with the www.goldcosucks.com domain name.

56.    Mr. Wilson memorialized his scheme in the following text message, a

true and correct copy of which is attached hereto as **Exhibit 8**, to Mr. Gerszt,

Goldco's founder:


>
> Gerszt, this is Clackum.
>
> You screwed my 86-year-old family member with a retarded daughter out of most of her life savings. Alabama is an 8-day cancel state and she did cancel after 5 days.
>
> I have over 1,000 numbers of your victim "clients". [sic] About 100 have replied with interest in going after your evil ass for your compensation.
>
> I have stopped communicating with them.
>
> Until today, douchebag.
>
> Agree to refund her 300k (as you were legally required two months ago) by 3:00 Central time TODAY or everyone gets a link at the unmoderated forum at www.Goldcosucks.com, along with our story and an urging to contact their state attorney general to put your pansy criminal ass in jail and not take this illegal elder abuse lying down.

> If www.GoldcoSucks.com goes live, it will cost you 50K minimum to buy it and shut it down.
>
> You will have so many people after you you'll want to leave the country but Schwartz[6] will have all your money for legal fees.
>
> All because you don't have the balls to follow the law in a state where you do business? You'll deserve all the misery you bring on yourself.
>
> I almost hope you think I'm bluffing.
>
> Was I bluffing before?

(Ex. 8.)

57.    Thus, Mr. Wilson issued an ultimatum: pay $300,000 that Goldco did not owe and $50,000 to purchase his defamatory website, or he would further use the Confidential Information to harm Goldco's business reputation.

58.    Mr. Wilson's efforts went further and beyond the above allegations.

59.    Mr. Wilson also directed his harassment at Brenda Whitman ("Ms. Whitman"), the Interim CEO at Goldco.

60.    Mr. Wilson called Ms. Whitman on numerous occasions and left threatening voicemail messages.

---

[6] Mr. Schwartz is Mr. Gerszt's personal attorney, so Mr. Clackum implied that the frivolous litigation he encourages will cost Mr. Gerszt a lot of money.

61.   On one occasion, Mr. Wilson warned Ms. Whitman: "Don't make me come out there!"

62.   On other occasions, Mr. Wilson referenced a call to the Alabama Attorney General's Office and also threatened criminal prosecution if Ms. Whitman did not accede to his demands.

63.   Mr. Clackum also posted defamatory information about Mr. Gerszt and Ms. Whitman on www.Goldcosucks.com, including false, baseless allegations about an alleged affair.

64.   Mr. Cope also collaborated with Mr. Wilson. Mr. Wilson and Mr. Cope are both listed as members of California Cannabis Compliance, LLC, a corporation that was formed only a few weeks before the events giving rise to Goldco's causes of action.[7] (Ex. 9.) The business address for California Cannabis Compliance, LLC is the same address as Wholesale Gold's principal place of business. (*Compare* Ex. 4 *with* Ex. 9.)

65.   Mr. Cope wrote an email to Goldco's California counsel as part of the extortion conspiracy:

---

[7] A copy of California Cannabis Compliance, LLC's public filings with the California Secretary of State is attached hereto as **Exhibit 9**.

Dear Mr. Grinblat,

As a follow-up to this morning's email, I am advised that a website is now in development: http://goldcosucks.com.

This website is scheduled to go active this Friday at 5:00 p.m. PST, perhaps sooner.

It will provide an account of the Barbara Clackum debacle, "single elderly woman gets taken and abused by big-city gold sales company." In addition, it will provide an non-moderated forum for Goldco clients, employees, past employees, past and prospective clients and, really, anyone who wishes to weigh in on related topics like their impressions of Goldco's founder and CAP (Chief Asset Protector).

Email invitations to visit the sight will be sent by to Goldco clients by the analytics and detection team I no longer influence, other than to kibosh the website's activation the moment Mrs. Clackum is made whole. Once it's activated, it will obviously cost a high sum to shut down.

I am authorized to enter into mutual cease-fire and reciprocal hold-harmless agreements, as well as my earlier non-referral agreement, providing name list, and so forth. But my expiration date is fast approaching as to this case is fast approaching.

Best regards,

Keith Cope
Attorney at Law
1574 West Street
Redding, CA 96001
(530) 917-0077

A true and correct copy of the email is attached hereto as **Exhibit 10**.

66.   In this email, Mr. Cope demonstrates that he could control dissemination of the Confidential Information. (*Id.*) He reaffirms his clients' ultimatum: "pay up" or he will allow Mr. Wilson to use the Confidential Information to disseminate defamatory information.

67.   On May 31, 2018, Mr. Wilson reiterated his extortionate demand and intent to interfere with Goldco's customer relationships with the following text message:

(Ex. 8.)

## COUNT ONE: CONSPIRACY TO COMMIT VIOLATION
## OF 18 U.S.C. § 1962
## (Mr. Wilson and Ms. Clackum)

68.    Goldco restates and incorporates the allegations contained in all prior

paragraphs of this Amended Complaint as if fully set forth herein.

69.    18 U.S.C. § 1964(c) establishes a civil cause of action for violations of

18 U.S.C. § 1962.

70.    18 U.S.C. § 1962(d), in turn, makes it "unlawful for any person to

conspire to violate" 18 U.S.C. § 1962(a), (b), or (c).

71.     The definition of "racketeering activity" under subsections (a), (b), and (c) includes extortion under 18 U.S.C. § 1951, the Hobbs Act. *See* 18 U.S.C. § 1961.

72.     Mr. Wilson, Ms. Clackum, and Mr. Cope conspired to commit extortion under 18 U.S.C. § 1951.

73.     Mr. Wilson, Ms. Clackum, and Mr. Cope conspired to seek to induce Goldco to part with $350,000 through threatened force and the fear of economic loss caused by damage to its business reputation.

74.     Mr. Wilson's, Ms. Clackum's, and Mr. Cope's conspiracy to commit extortion would adversely affect interstate commerce.

### COUNT TWO: VIOLATION OF 18 U.S.C. § 1836, THE DEFEND TRADE SECRETS ACT (Mr. Wilson, Wholesale Gold, and Wild West)

75.     Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

76.     The Confidential Information is used in interstate commerce.

77.     Goldco undertakes reasonable efforts to maintain the secrecy of the Confidential Information, including without limitation requiring all employees to sign NDAs and restricting access to the Confidential Information.

78.     Mr. Wilson knowingly misappropriated the Confidential Information by inducing Goldco's former employees to reveal the Confidential Information in violation of their NDAs.

79.     Mr. Wilson knowingly used the Confidential Information to contact Goldco's former employees for the sole purpose of disparaging Goldco's business reputation through false and defamatory statements.

80.     Goldco has been damaged by the wrongful misappropriation and use of the Confidential Information.

81.     Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

### COUNT THREE: VIOLATION OF CAL. CIV. CODE § 3426, THE UNIFORM TRADE SECRETS ACT
### (Mr. Wilson, Wholesale Gold, and Wild West)

82.     Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

83.     The Confidential Information is not publicly known, is not generally known in the trade or business, and cannot be readily ascertained or derived from publicly available information.

84.     Goldco undertakes reasonable efforts to maintain the secrecy of the Confidential Information, including without limitation requiring all employees to sign NDAs and restricting access to the Confidential Information.

85.     The Confidential Information has significant economic value because Goldco's competitors could use this information to directly solicit Goldco's

customers without incurring the temporal and financial costs of developing their own customer database.

86.     Mr. Wilson knew, or should have known, that the Confidential Information was a trade secret.

87.     Mr. Wilson knowingly misappropriated the Confidential Information by inducing Goldco's former employees to reveal the Confidential Information in violation of their NDAs.

88.     Mr. Wilson knew, or should have known, that the information was a trade secret and that the trade secret had been misappropriated.

89.     Mr. Wilson used the Confidential Information to contact Goldco's former employees for the sole purpose of disparaging Goldco's business reputation through false and defamatory statements.

90.     Goldco has been damaged by the wrongful misappropriation and use of the Confidential Information.

91.     Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

## COUNT FOUR: DEFAMATION
### (Mr. Wilson, Wholesale Gold, and Wild West)

92.     Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

93.     The website www.Goldcosucks.com contains false and defamatory statements about Goldco, including untrue statements that "the animals at Goldco jerked [Ms. Clackum] around" for a week and "told her that she never requested the refund."

94.     The website contains false and defamatory statements that Ms. Clackum purchased Proof coins, when in fact she did not.

95.     The website contains false and defamatory statements that Goldco determined the value of her Goldco purchases in her IRA, when in fact the custodian of her IRA was responsible for any such valuations.

96.     Upon information and belief, Mr. Wilson communicated false and defamatory statements to Goldco's customers in his communications with them.

97.     Mr. Wilson intentionally communicated the false and defamatory statements in an effort to extort Goldco.

98.     Mr. Wilson's false and defamatory statements harmed, and will continue to harm, Goldco's business reputation.

99.     Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

## COUNT FIVE: INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS
### (Mr. Wilson, Wholesale Gold, and Wild West)

100.   Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

101.   Goldco's former employees had continuing obligations under the NDAs they executed.

102.   Upon information and belief, Mr. Wilson knew that Goldco's employees had executed NDAs.

103.   Mr. Wilson interfered with Goldco's contractual relationship with its former employees by actively inducing them to disclose confidential customer information.

104.   There was no justification for the interference.

105.   Goldco has been damaged by the interference.

106.   Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

## COUNT SIX: INTENTIONAL INTERFERENCE WITH
## CONTRACTUAL RELATIONS
### (Mr. Wilson, Wholesale Gold, and Wild West)

107.   Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

108.   Goldco has contractual relationships with its customers.

109.   Mr. Wilson knew that Goldco had contractual relationships with its customers.

110.   Mr. Wilson interfered with Goldco's contractual relationships with its customers by contacting, or attempting to contact, over 1,000 customers to convince them to end their business relationship with Goldco based on false and defamatory statements.

111.   There was no justification for the interference.

112.   Goldco has been damaged by the interference.

113.   Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

## COUNT SEVEN: CIVIL EXTORTION
### (Mr. Wilson, Wholesale Gold, and Wild West)

114.   Goldco restates and incorporates the allegations contained in all prior paragraphs of this Amended Complaint as if fully set forth herein.

115.   Mr. Wilson made threats seeking to induce Goldco to part with $350,000 through threatened force and the fear of economic loss caused by damage to its business reputation.

116.   Mr. Wilson knew the threats were wrongful and were without grounds. The threats of force and damage to business reputation constitute civil extortion under California law.

117.   The threats were coupled with express and/or implied demands for money from Goldco.

118.   Goldco incurred loss, cost and damage because of, and as a direct result of, the threats of Mr. Wilson.

119.   Wholesale Gold and Wild West are vicariously liable for Mr. Wilson's wrongful conduct.

**WHEREFORE**, Goldco requests judgment against Defendants as follows:

1.   The Court enter an order and judgment permanently enjoining Defendants and their respective agents, servants, employees, attorneys, and all other persons who are in active concert or participation with the Defendants (collectively or severally) from:

(a)   Communicating regarding the issues and facts giving rise to this litigation with any individual or entity that any Defendant or any agent or representative of any Defendant (individually or collectively) knows, or has reason to believe, is a current, former, or prospective customer of Plaintiff;

(b)   Communicating regarding the issues and facts giving rise to this litigation with any individual or entity that any Defendant or any agent or representative of any Defendant (individually or

collectively) knows, or has reason to believe, is a current, former, or prospective employee of Plaintiff;

(c)　Communicating whatsoever with any current or former Goldco customers who Defendants learned of through their misappropriation of the Confidential Information;

(d)　Extorting consideration from Goldco, its principals, employees and/or owners, including any efforts to persuade Goldco to pay any Defendant money that directly or indirectly involves: (1) threats to publish in any forum or to share information about Goldco, its principals, owners, or employees, or (2) threats to defame Goldco, its principals, owners, or employees, or (3) threats of criminal action against Goldco, its principals, owners, or employees;

(e)　Continuing to operate in any manner the website <goldcosucks.com> or any similar website, as the operation by Defendants of such website serves no legitimate purpose but, rather, merely exists as an element of Defendants' attempt to extort Goldco, its principals, officers, or employees;

(f)　Further tortious interference with Goldco's protectable business interest with its employees;

(g)     Further tortious interference with Goldco's protectable business interest with its customers; and

(h)     Further dissemination or use of the identities of Goldco's customers, including their phone numbers or any other personally identifying information.

2.      Without waiver of damages that may be claimed in arbitration against Ms. Clackum, that the Court enter an order and judgment:

(a)     Holding Mr. Wilson, Wholesale Gold, and Wild West liable for all damages suffered by Goldco resulting from the acts alleged herein;

(b)     Requiring Mr. Wilson, Wholesale Gold, and Wild West to pay an award of damages in an amount to be determined at trial, plus pre- and post-judgment interest;

(c)     Requiring Mr. Wilson, Wholesale Gold, and Wild West to pay an award of punitive damages as allowable under the law;

(d)     Requiring Mr. Wilson, Wholesale Gold, and Wild West to pay Goldco its full costs and reasonable attorneys' fees;

(e)     Granting Goldco any other remedy to which it may be entitled under Federal or State law; and

(f)     For such other and further relief to which Goldco shows it is justly entitled at law or in equity.

Respectfully submitted,

/s/ Mark D. Foley, Jr.
John N. Bolus (ASB-5753-U54J)
Scott S. Brown (ASB-7762-B65S)
Mark D. Foley, Jr. (ASB-3536-G20M)
*Attorneys for Goldco Direct, LLC*

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203
(205) 254-1000
Facsimile: (205) 254-1999
jbolus@maynardcooper.com
sbrown@maynardcooper.com
mfoley@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served upon all non-CM/ECF participants by mailing a copy to them at the address indicated below via U.S. mail, postage pre-paid, on the <u>30th</u> day of November, 2018.

Warren Wilson
29311 Tree Hollow Glen
Agoura Hills, CA 01301

Wholesale Gold Silver IRA, Inc.
c/o Richard H. Bennett
151 Amor Ct.
Galt, CA 95632

*/s/ Mark D. Foley, Jr.*
**OF COUNSEL**
