FILED
2019 Mar-27 PM 12:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **GOLDCO DIRECT, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 4:18-CV-850-KOB |
| | ) |
| **WARREN WILSON,** | ) |
| **WHOLESALE GOLD SILVER IRA, INC.,** | ) |
| And **WILD WEST COINS, INC.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter now comes before the court on Defendant Warren Wilson's motion to dismiss and motion to transfer.[1] (Docs. 55–58). For the reasons discussed below, in addition to the reasons discussed on the record during the telephone conference held on March 7, 2019, the court will DENY Mr. Wilson's motion to dismiss and will DENY Mr. Wilson's motion to transfer.

**I. Background**

In three separate transactions between October 2016 and March 2018, Goldco Direct, LLC sold investment products to Barbara Clackum, a resident of Gadsden, Alabama, for a total price exceeding $400,000. Within 24 hours of her final purchase for $159,901.72, Ms. Clackum sought to cancel the order and requested a full refund. Goldco refunded her most recent purchase but did not agree to cancel or repurchase Ms. Clackum's first or second order.

---

[1] Mr. Wilson's motion purported to make arguments on behalf of his co-defendants Wholesale Gold Silver IRA, Inc. and Wild West Coins, Inc. Because (1) Mr. Wilson is not an attorney and thus cannot represent anyone but himself and (2) business entities cannot appear pro se, the court previously struck Mr. Wilson's motion as to the two business entities. (*See* Doc. 59).

Goldco alleges that around this same time Ms. Clackum began working with Warren Wilson, president of Goldco competitor Wholesale Gold Silver IRA, Inc. and founder of Wild West Coins, Inc., and Keith Cope, an attorney licensed to practice law in California. Specifically, Goldco alleges that Mr. Wilson adopted the alias "Bruce Clackum," held himself out as the nephew of Barbara Clackum, and actively induced former Goldco employees to violate their nondisclosure agreements by providing him confidential Goldco customer information.

Goldco alleges Mr. Wilson used this confidential customer information to defame Goldco by directly contacting Goldco's customers and encouraging them to initiate lawsuits against Goldco. Mr. Wilson also allegedly created the website www.goldcosucks.com to publish his claims that Goldco violated Alabama law when it declined to refund a "$300,000 IRA transaction" five days after the transaction date. The record indicates that Goldco's customers were contacted by someone with a "205" area code, and the domain name www.goldcosucks.com was purchased using a credit card in the name of "B Clackum" with a shipping and billing address at Ms. Clackum's residence in Gadsden, Alabama. The website encouraged Goldco customers to contact their state attorney general about Goldco's actions and indicated that "Bruce Clackum" had already contacted the Alabama Attorney General's Office.

Goldco alleges it was then presented an ultimatum: refund Ms. Clackum her purchase price or "Bruce Clackum" would send the website link to Goldco's customers, which included a forum in which they could complain about Goldco.

Goldco originally filed this lawsuit against Barbara Clackum and Bruce Clackum, alleging conspiracy to commit RICO violations, violation of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets Act, and four additional common law torts. Goldco also requested injunctive relief and moved for a temporary restraining order to prohibit

Defendants' further communication with any Goldco customers and further operation of the website. This court granted the preliminary injunction and later granted Goldco's request for a permanent injunction.

After preliminary discovery to determine the actual identity of "Bruce Clackum," Goldco filed its first amended complaint, which removed Bruce Clackum as a defendant and added Warren Wilson, Wholesale Gold, and Wild West Coins. (Doc. 50). Goldco then moved to voluntarily dismiss Barbara Clackum, which this court granted, leaving only Mr. Wilson and his two business entities as defendants. Mr. Wilson subsequently moved the court to either dismiss him for lack of personal jurisdiction or to transfer the case to an appropriate jurisdiction in California. The court ordered Goldco to show cause why it should not grant Mr. Wilson's motion, and Goldco timely filed its response. (Docs. 59 and 63). Two days before a status conference in this case, Mr. Wilson filed a "Notice," which at least in part attempted to argue why dismissal or transfer is appropriate in this case. (Doc. 70). At the status conference, the parties further discussed Mr. Wilson's motion with this court. The parties have therefore fully briefed this issue, and the motion is ripe for review.

## II. Discussion

Defendant Warren Wilson moves to dismiss Goldco's claims against him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (internal citations omitted). Mr. Wilson alternatively moves to transfer the case, presumably under 28 U.S.C. § 1404(a) and presumably to the United States District Court of the Central District of California.

*A. Motion to dismiss under Rule 12(b)(2)*

"In analyzing a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), [the court must] first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997) (citations omitted). Goldco's amended complaint brings claims pursuant to the RICO Act and asserts grounds for personal jurisdiction pursuant to RICO's nationwide service of process provision. The Eleventh Circuit has explicitly held that RICO's nationwide service of process provision can serve as the statutory basis for personal jurisdiction and that serving process on a United States resident satisfies the statutory basis for personal jurisdiction over that resident. *Id.* Mr. Warren is a United States resident, so the only remaining question is whether exercising personal jurisdiction in this case comports with due process.

"[W]hen, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." *BCCI Holdings*, 119 F.3d at 942 (citing *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1344 (11th Cir. 1988)). "[T]o evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation. . . . As in other due process inquiries, the balancing seeks to determine if the infringement on individual liberty has been justified sufficiently by reference to important governmental interests." *Id.*, at 946.

But courts "must engage in this balancing *only if* a defendant has established that his liberty interests actually have been infringed." *BCCI Holdings*, 119 F.3d at 946 (emphasis added) (citations omitted).

So Mr. Wilson first bears the burden of showing that the inconvenience of litigating the case in the chosen forum rises to a level of constitutional concern, and "only in highly unusual cases" will a defendant be able to show "constitutionally significant inconvenience." *BCCI Holdings*, 119 F.3d at 946–47. If Mr. Wilson meets his high burden, Goldco would then bear the burden of showing that "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Id.*, at 948.

The defendant shoulders the burden "to demonstrate that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage' in comparison to his opponent." *BCCI*, 119 F.3d at 948 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

In his brief supporting his motion to dismiss and his "notice" filed on March 5, 2019, Mr. Wilson asserted that the inconvenience of litigating this case in Alabama will be constitutionally significant because he resides in California and takes care of an adult son. (Doc. 70 at 1). Mr. Wilson also references having a "handicapped granddaughter who will rely on [his] son as long as they are alive" and a "daughter in law who was left crippled by life-saving brain surgery," but he does not specify if he personally takes care of them. (*Id.*). Mr. Wilson also argues that litigating this matter in Alabama puts him at a disadvantage because "all of the lawyers that [he] know[s] and trust[s] are not admitted to practice" here, and the Alabama lawyers he has contacted "will not challenge Cooper Gayle [sic] because the firm is so powerful in Alabama." (*Id.*). By comparison, Mr. Wilson alleges that Goldco has "the resources to hire multiple law firms in multiple states." (*Id.*).

The court initially notes that "nothing [is] inherently burdensome about crossing a state line." *BCCI Holdings*, 119 F.3d at 947. And while Mr. Wilson's responsibilities for his child,

grandchild, and daughter-in-law could make litigation in Alabama more onerous, he failed to specifically explain how litigating this case in this forum will be so inconvenient as to rise to constitutionally significant levels. Further, accepting Goldco's allegations as true, Mr. Wilson controlled the events giving rise to this action via contacts with Ms. Clackum, use of a phone number with an Alabama area code, and threatening to contact the Alabama Attorney General's Office, so Mr. Wilson should not be surprised at being "haled into court" in this forum. *Cf. World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Finally, the court notes that the law firm representing Goldco in this case, Maynard Cooper & Gale, P.C., frequently appears before this court, usually against a party represented by Alabama counsel; so based on its personal knowledge, Alabama lawyers do frequently challenge Goldco's chosen counsel.

So, while the court acknowledges that Plaintiff Goldco's chosen forum presents certain challenges for Defendant Mr. Wilson, he has failed to meet his initial burden of showing that these challenges rise to constitutionally significant levels of inconvenience. Having determined that Mr. Wilson failed to establish constitutionally significant inconvenience, the court concludes it can exercise personal jurisdiction over him without violating his due process rights under the Fifth Amendment.

*B. Motion to transfer under § 1404(a)*

Alternatively, Mr. Wilson moves this court to transfer the case, pursuant to 28 U.S.C. § 1404(a), presumably to the Central District of California, although his motion does not specify. The statute provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a) (emphasis added). The moving party bears the burden of demonstrating that the interests weigh strongly in favor of transfer. *In re Ricoh Corp.*,

870 F.2d 570, 573 (11th Cir. 1989); *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp. 2d 634, 637 (S.D. Ala. 2007).

Preliminarily, Goldco argues transfer would be improper because it could not have originally brought this action in the Central District of California. (Doc. 63 at 16–18). A district court cannot transfer a case to another district or division unless "the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Goldco argues that it could not have originally brought this action in the Central District of California because 18 U.S.C. § 1965 provides that RICO claims "may be instituted in the district court of the United States for any district in which [a defendant] resides, is found, has an agent, or transacts his affairs." The original complaint makes clear that Goldco believed that the two named defendants, Barbara Clackum *and* "Bruce Clackum," were residents of Alabama and Georgia, respectively. (Doc. 1 at ¶¶ 3–4). So, Goldco argues, it could not have originally brought the action in the Central District of California.

But RICO's venue provision is not necessarily exclusive:

> There is no binding Eleventh Circuit precedent addressing whether the RICO venue provision is exclusive. However, several courts have concluded that both the RICO provision and § 1391 apply where a RICO claim is at issue. . . . That conclusion is consistent with the permissive wording of § 1965(a) (which states that an action "may be instituted" in the identified fora) as well as its legislative history, which indicates Congress's intent to provide a liberal venue standard modeled on the venue provisions of the antitrust laws. . . . With respect to antitrust actions, the Eleventh Circuit has concluded that the antitrust venue provisions supplement rather than supplant the general venue provisions in § 1391.

*Riley v. Donatelli*, No. 3:16-cv-898-J-34JBT, 2017 WL 3316479, at *8 n. 11 (M.D. Fla. Aug. 3, 2017) (citations omitted). In fact, Goldco's original complaint argues that venue was proper in the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b)—not 18 U.S.C. § 1965. (*See* Doc. 1 at ¶ 9).

But this court does not need to decide whether RICO's venue provision supplements or supplants § 1391 in this case. Even assuming Goldco could have originally brought this case in the Central District of California, Mr. Wilson has not met his burden of showing the interests of justice weigh strongly in favor of transfer.

"Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)).

The first and fifth factors—convenience of the witnesses and availability of process—weigh against transfer, as the chief nonparty witness in this case, Barbara Clackum, resides in the Northern District of Alabama. Ms. Clackum is seventy-nine years old and cares for her mentally handicapped daughter, making the Central District of California an inconvenient forum for her. And Ms. Clackum resides more than 100 miles away from the Central District of California, placing her beyond its nonparty witness subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A).

The fourth factor—locus of operative facts—also weighs against transfer, as the central facts occurred in Alabama. Ms. Clackum transacted with Goldco while residing in Alabama, the first in a chain of incidents that ultimately gave rise to this case. Mr. Wilson allegedly impersonated an Alabama native, used a phone number with an Alabama area code, and claimed to have called the Alabama Attorney General's Office. Goldco also alleges that Mr. Wilson's

actions caused the greatest reputational injury in Alabama because Mr. Wilson specifically accused Goldco of violating Alabama law to defraud an elderly Alabama resident.

Finally, the eighth factor—plaintiff's choice of venue—weighs against transfer because Goldco selected the Northern District of Alabama by filing its lawsuit here. Even after learning the supposed identity of "Bruce Clackum" to be a resident of California, Goldco maintains that the Northern District of Alabama is its preferred venue. This court must give Goldco's preference proper weight.

While factors two and three—location of relevant documents and convenience of parties—weigh in favor of transfer, other courts have discounted the value of these factors. For example, the Southern District of Florida has held that "producing documents and other files for litigation . . . is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval." *Game Controller Tech., LLC v. Sony Computer Entm't Am., LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014) (internal quotation marks and alterations omitted). And the Middle District of Alabama has noted that the "convenience of non-party witnesses receives considerably more weight than the convenience of parties or party-witnesses." *ASD Specialty Healthcare, Inc. v. Letzer*, No. 2:10-CV-388-WKW, 2010 WL 2952573, at *4 (M.D. Ala. July 26, 2010).

The court acknowledges that a California district court likely has more familiarity with the law governing some of Goldco's claims. But Mr. Wilson's allegedly weaponizing *Alabama* law to extort Goldco comprises an important part of Goldco's claims, so this court's familiarity with Alabama law could prove similarly useful.

This court lastly notes that the parties have presented no evidence regarding their relative means, nor any argument that a trial in the Central District of California would be more efficient.[2]

With the above factors in mind, and affording proper weight to Goldco's decision to file this lawsuit in this forum, the court will DENY Mr. Wilson's motion to transfer this case to the Central District of California, or any other court in California.

### III. Conclusion

For the reasons stated above, the court will DENY Mr. Wilson's motion to dismiss and will DENY Mr. Wilson's alternative motion to transfer.

**DONE** and **ORDERED** this 27th day of March, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] But the court points out that the September 2018 Civil Justice Reform Act Report indicated, as of September 30, 2018, the Central District of California had 295 cases pending longer than three years and 216 motions pending longer than six months, while the Northern District of Alabama had 124 cases pending longer than three years and 82 motions pending longer than six months. U.S. Courts, *Civil Justice Reform Act Report Summary*, app. A, at 57, 72 (Sept. 30, 2018), https://www.uscourts.gov/sites/default/files/cjra_na_0930.2018_1.pdf.